Edward Groller, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued October 9, 1980, before Judges MacPhail, Williams, Jr. and Palladino, sitting as a panel of three.

124

*Douglas G. Dye,* with him *Mary Jeffrey,* for petitioner.

*Carol A. Genduso,* Assistant Attorney General, for respondent.

OPINION BY JUDGE PALLADINO, December 4, 1980:

Petitioner, through his legal representative, contacted the local County Board of Assistance (Board) on May 8, 1979, in order to apply for State Blind Pension (SBP) benefits. The first SBP payment was authorized effective August 30, 1979 for the period of July 30, 1979 to August 29, 1979.

On August 7, 1979, petitioner filed an appeal with the Department of Public Welfare (Department) alleging undue administrative delay in the processing of his application and requesting SBP payments for the months of May, June, and July of 1979. An evidentiary hearing was held on September 14, 1979, at which time the Hearing Examiner determined that petitioner was entitled to receive SBP benefits for the month of July 1979, but was not entitled to benefits for May and June of 1979. The Hearing Examiner's Order was affirmed by the Department and this timely appeal followed.

The petitioner's initial contact with the Board on May 8, 1979 consisted of a request that an application for SBP benefits be taken on his behalf. On May 25, 1979, 13 working days later, the petitioner's application was taken by a case worker from the Board.

The case worker informed the petitioner that to be eligible for SBP benefits, an applicant must "undergo an examination for visual acuity as required by the Department"[1] and that the examining physician must submit medical verification forms to the county medical consultant before SBP benefits can be authorized.[2]

On May 29, 1979, the case worker sent the medical verification forms to petitioner's doctor with instructions that they be completed and returned as soon as possible. The doctor returned the forms on July 11, 1979, approximately six weeks after receiving them from the case worker. It is important to note that obtaining medical verification is normally the responsibility of the applicant.[3] However, in this instance the case worker sent the forms directly to the doctor in compliance with the petitioner's request that he be relieved of that task.

While the Department admits there was an unusual delay (13 working days) in processing the application at the county level, it maintains that this delay did not cause the petitioner to lose benefits. It is the Department's position that if there had not been a 13 day delay, the petitioner would still have

---

[1] Section 451.3(c)(1) of the Public Assistance Eligibility Manual, 55 Pa. Code §451.3(c)(1).

[2] Appendix A to Chapter 451 of the Public Assistance Eligibility Manual outlines the criteria used for determining visual acuity, as well as the procedures to be followed by the examining physician with regard to medical verification forms. 55 Pa. Code §451-A.

[3] See Appendix A "Use of Forms." 55 Pa. Code §451-A.

been ineligible for benefits for the months of May and June because of his doctor's six week delay in returning the medical verification forms. The obvious conclusion to the Department's logic is that since obtaining medical verification is the applicant's responsibility, the Department cannot be held to blame for the doctor's unwarranted delay.

Though we recognize that final eligibility for SBP benefits depends on medical verification and that normally the responsibility for obtaining verification lies with the applicant, we feel compelled to find for the petitioner because of the unique factual circumstances surrounding this case.

As was pointed out above, it was the case worker who sent the medical verification forms to petitioner's doctor. In so doing, the case worker caused the petitioner to unduly rely on her for prompt advisement as to the return of the forms and the information contained therein. Although it was not the responsibility of the case worker to follow-up to make sure that the medical verification forms were promptly returned and the petitioner incorrectly relied on her for this assistance, the pivotal factor remains that it was the case worker's initial agreement to send the forms which caused the undue reliance.

As such, after the case worker agreed to send the verification forms to the doctor, she should have made sure that the petitioner fully understood that the ultimate responsibility for a prompt return of the forms lies with the applicant and not with the Department. Therefore, a denial of benefits for May and June 1979, which incidentally amounts to a grand total of $190.00, would be akin under the facts of this case to penalizing the petitioner because of his infirmity. It was the petitioner's handicap which caused him to request the assistance of the case

worker in obtaining medical verification in the first place.

The petitioner argues, and we agree, that had he been notified that the forms had not been returned, he could have contacted his physician and avoided the costly six week delay. This factor along with the unexplained 13 day delay in processing the application at the county level caused the petitioner to lose benefits for the months of May and June 1979.

The undue delays encountered by the petitioner in obtaining benefits to which he was rightfully entitled were clearly not the result of any negligence or other malfeasance on his part.

Accordingly, we will enter the following

ORDER

AND Now, December 4, 1980, that part of the order of the Department of Public Welfare, dated October 23, 1979, denying State Blind Pension payments to Edward Groller for May and June 1979 is reversed and the Department is directed to award benefits in the amount of $285.00 to cover State Blind Pension payments incorrectly denied Edward Groller for the months of May, June, and July 1979.